UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RJ CAPITAL, S.A.,

                        Plaintiff,

            v.

LEXINGTON CAPITAL FUNDING III, LTD.,
LEXINGTON CAPITAL FUNDING III, LLC,
MERRILL LYNCH INTERNATIONAL,
HARDING ADVISORY, LLC, and THE BANK
OF NEW YORK TRUST MELLON COMPANY,
NATIONAL ASSOCIATION,

                        Defendants.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 25 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff RJ Capital, S.A. holds debt securities ("Notes") issued by Defendants

Lexington Capital Funding III, Ltd. and Lexington Capital Funding III, LLC.  Plaintiff obtained

the Notes in exchange for a $112 million investment it made between April and November 2008.

(Am. Cmplt. ¶ 8)  The Notes are governed by an indenture agreement dated as of January 11,

2007 (the "Indenture").  (Id. at ¶ 5; Yoskowitz Aff., Ex. 2 (Indenture))  The signatories to the

Indenture are the Lexington Capital defendants and Defendant The Bank of New York Trust

Mellon Company ("BONY"), which agreed to serve as Indenture Trustee.  (Yoskowitz Aff., Ex.

2 (Indenture))

            In the Indenture, the Lexington Capital defendants agree to "duly and punctually

pay all principal [and] interest] . . . in accordance with the Notes . . . and this Indenture."  (Id. at

¶¶ 2, 6; Yoskowitz Aff., Ex. 2 (Indenture) at § 7.1)  As trustee, BONY holds the collateral

securing the Notes in trust, and its duties include serving as "Paying Agent for the payment of

principal and interest on the Notes."  (Id. at ¶ 11 (quoting Yoskowitz Aff., Ex. 2 (Indenture) at

§7.2; see also Yoskowitz Aff., Ex. 2 (Indenture) at §§ 6.17, 10.2)

        The Indenture provides for the appointment of Defendant Harding Advisory, LLC

as Collateral Manager (Id. at ¶ 12; Yoskowitz Aff., Ex. 2 (Indenture) at 18), and simultaneous

with entering into the Indenture, Defendant Lexington Capital Fund III, Ltd. entered into a

Collateral Management Agreement ("CMA") with Harding.  (Id.; Yoskowitz Aff., Ex. 3 (CMA))

Under the CMA, Harding agreed to, inter alia, "supervise and direct the Disposition and

Acquisition of the Collateral Debt Securities. . . supervise and direct the investment of funds on

deposit in the Accounts in Eligible Invesments . . . select all Collateral to be Acquired by the

Issuer in accordance with the Eligibility Criteria," and to "monitor the Collateral . . . on an

ongoing basis and assist the Trustee to provide to the Issuer [certain] reports, certificates,

schedules, determinations, and other data. . . ."  (Yoskowitz Aff., Ex. 3 (CMA) at § 2(b)-(e))

        The gravamen of the Amended Complaint is that Defendants have misapplied

certain provisions of the Indenture governing principal and interest payments, to the detriment of

Plaintiff.  (Am. Cmplt. ¶¶ 43-56)

        The Amended Complaint asserts claims of (1) breach of contract against the

Lexington Capital defendants and BONY; (2) breach of fiduciary duty against BONY; (3)

tortious interference with contract against Harding; and (4) unjust enrichment, diversion, and

breach of the implied covenant of good faith and fair dealing against all defendants.  (Am.

Cmplt. ¶¶ 65-103)

        All three remaining defendants[1] have moved to dismiss, arguing that (1) this

lawsuit is barred by the "Limitation on Suits" provision in the Indenture; (2) that Plaintiff's

---

[1]  Plaintiff filed a notice of voluntary dismissal as to Defendants Lexington Capital Funding III,
Ltd. and Merrill Lynch International on February 23, 2010.  (Dkt. No. 11)

reading of certain payment provisions of the Indenture is not plausible; and (3) that, in any event, Plaintiff has failed to state a claim as to any cause of action.

For the reasons stated below, Lexington Capital Funding III, LLC and Harding's motions to dismiss will be granted in their entirety, and BONY's motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

I.  **INDENTURE PROVISIONS CONCERNING CALCULATION OF PRINCIPAL AND INTEREST PAYMENTS**

Section 10.7(b) of the Indenture provides that every quarter the Issuer – Lexington Capital Funding III, Ltd. (Yoskowitz Aff., Ex. 2 (Indenture) at 1) – must render an accounting, referred to as a "Note Valuation Report," to the note holders and other Indenture participants.  (Am. Cmplt. ¶ 21; Yoskowitz Aff., Ex. 2 (Indenture) § 10.7(b))  The Note Valuation Report sets forth, inter alia, an accounting of the principal and interest payments – the "Principal Proceeds Waterfall" and "Interest Proceeds Waterfall" payments – to be disbursed to noteholders "on the next Distribution Date."  (Id. at ¶¶ 21-22; Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(a)(i)-(ii)  Under the Indenture, "[e]ach Note Valuation Report shall constitute instructions to the Trustee to withdraw on the related Distribution Date from the Payment Account and pay or transfer amounts set forth in such report in the manner specified, and in accordance with the Priority of Payments established in, Section 11.1(a) hereof."  (Yoskowitz Aff., Ex. 2 (Indenture), § 10.7(b)(26)).

Under the Indenture, the Principal Proceeds and Interest Proceeds Waterfall payments are to be calculated only "after applying funds in the Accounts in accordance with the Account Payment Priority [provision of the Indenture]."  (Yoskowitz Aff., Ex. 2 (Indenture) §

3

11.1(a)(i), (ii)  For example, with respect to Principal Proceeds Waterfall payments, the

Indenture provides:

> On each Distribution Date (other than a Redemption Date, the Stated Maturity or the Accelerated Maturity Date), after applying funds in the Accounts in accordance with the Account Payment Priority, Principal Proceeds, and, to the extent described in the Sequential Payment Priority and the Modified Sequential Payment Priority, the CDS Reserve Account Excess Withdrawal Amount with respect to the related Due Period[,] will be distributed in order of priority (the "Principal Proceeds Waterfall") . . .

(Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(a)(ii)) (emphasis added).[2]

> "Account Payment Priority" is addressed in Section 11.1(m), which provides:

> Before requesting a Class A-1 Funding under the Class A-1 Swap to fund a Permitted Use, the Trustee shall apply all funds, securities and other property standing to the credit of the Accounts specified below in the order of seniority specified below in order to pay as and when due and payable each of the obligations of the Issuer listed below (the "Account Payment Priority") . . .

(Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(m)) (emphasis added).

> The Trustee is responsible for making payments to noteholders in accordance

with these procedures:

> Notwithstanding any other provisions in this Indenture, but subject to the other clauses of this Article XI and Section 13.1 hereof, on each Distribution Date, the Trustee shall disburse amounts transferred to the Payment Account from the [Interest and Principal] Collection Accounts pursuant to Section 10.2 hereof as follows and for application by the Trustee in accordance with the following priorities. . . .

(Fioravanti Aff., Ex. B (Indenture) at § 11.1(a))

## II.  THE PAYMENT DISPUTE

> The Amended Complaint alleges that on or about January 12, 2009, and April 14,

2009, Lexington Capital Funding III, Ltd., the Issuer, disseminated Note Valuation Reports

showing quarterly distributions.  Those reports reflected Principal Proceeds Waterfall and

---

[2]  The same language appears in the Interest Proceeds Waterfall payment provision.  (Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(a)(i))

Interest Proceeds Waterfall payments, allegedly calculated in accordance with §§ 11.1(a)(i) and (ii) of the Indenture, without application of the Account Payment Priority set forth in § 11.1(m). The Amended Complaint asserts that the non-application of the Account Payment Priority in § 11.1(m) in connection with the January and April 2009 principal and interest payments "was consistent with past practice." (Am. Cmplt. ¶¶ 38-39, 43-44, 47) The Trustee deposited payments into Plaintiff's bank account reflecting those calculations, in accordance with § 10.7(b) of the Indenture. (Am. Cmplt. ¶ 39)

Lexington Capital Funding III, Ltd. later revised the January 12 and April 14, 2009 Note Valuation Reports, however, and issued revised Note Valuation Reports for these Distribution Dates. (Am. Cmplt. ¶ 39-40) The Revised Note Valuation Reports "altered the Priority of Payments calculation to the detriment of Plaintiff." (Id. at ¶ 40) In particular, Plaintiff alleges that in issuing the Revised Note Valuation Reports, Defendants "improperly applied Section 11.1(m) and the inapplicable 'Account Payment Priority,' which provision relates exclusively to a different scenario involving a certain request for a 'Class A-1 Funding,' which, according to the Trustee, did not occur with respect to the January and April Distribution Dates."[3] (Id. at ¶ 43)

Plaintiff further alleges that Defendants applied the "Account Payment Priority" provision only "with respect to the calculation of principal proceeds, not interest. With regard to interest, the Interest Proceeds Waterfall calculation was oddly preserved." (Id. at ¶ 45) Application of the "Account Payment Priority" provision to the calculation of Plaintiff's Principal Proceeds Waterfall payment resulted in "substantially lower distributions for each of the January 12, 2009 and April 14, 2009 Distribution Dates," however, and led the Trustee to

---

[3] There appears to be no dispute that there was no Class A-1 Funding request. (BONY/Harding Reply Br. 5 n. 2)

"withdr[a]w funds from Plaintiff's bank account in an amount of approximately five hundred thousand dollars ($500,000)."  (Id. at 41)

Plaintiff alleges that it "issued written notice to the Trustee, on or about September 14, 2009 and October 5, 2009, demanding payment of the . . . distributions."  (Am. Cmplt. ¶ 48)  "Defendants refused and failed to return to Plaintiff the funds the Trustee withdrew from Plaintiff's bank account pursuant to the Revised Valuation Reports," however.  (Id. at ¶ 48)

This action followed.

## DISCUSSION

In deciding a motion brought under Fed. R. Civ. P. 12(b)(6), a court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, a court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual allegations."  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1960 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  Id. (quoting Twombly, 550 U.S. at 557).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task

6

that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In determining the sufficiency of a complaint, this Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc. , 987 F.2d 142, 150 (2d Cir. 1993)); see also Chambers, 282 F.3d at 153 (documents that are "integral" to the complaint may be considered on motion to dismiss); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (court may consider documents plaintiff relied on in framing the complaint). Here, the Court will consider the facts alleged in the Amended Complaint and the Indenture and Collateral Management Agreement on which Plaintiff's claims are predicated.

"Interpretation of indenture provisions is a matter of basic contract law." Sharon Steel Corp. v. Chase Manhattan Bank, 691 F.2d 1039, 1049 (2d Cir. 1982). "Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" [4] K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)); see also Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when

---

[4]  The Indenture provides that it "constitute[s] a security agreement under the laws of the State of New York applicable to agreements made and to be performed therein" (Yoskowitz Aff., Ex. 2 (Indenture) at 3), and all parties cite to New York law.  Accordingly, the Court will apply New York law here.  See JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (applying New York law on the basis that the "parties agree [that New York law] governs their contract dispute"); Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying New York law on the grounds that "both parties cite exclusively to New York contract law in their argument").

the intent of the parties can fairly be gleaned from the face of the instrument.") (citing

Teitelbaum Holdings, Ltd. v. Gold, 48 N.Y.2d 51, 56 (1979)).

        "'[A] written contract is to be interpreted so as to give effect to the intention of

the parties as expressed in the unequivocal language they have employed."' Rockland

Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., 08-CV-7069 (KMK), 08-CV-11107

(KMK), 2009 WL 1154094, at *5 (S.D.N.Y. Mar. 19, 2009) (quoting Terwilliger, 206 F.3d at

245).  Accordingly, where a "'contract is clear and unambiguous on its face, the intent of the

parties must be gleaned from within the four corners of the instrument, and not from extrinsic

evidence.'" RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) (quoting De

Luca v. De Luca, 300 A.D.2d 342 (2d Dept. 2002)).

        However, "[w]here there are alternative, reasonable constructions of a contract,

i.e., the contract is ambiguous, the issue 'should be submitted to the trier of fact.'" K. Bell &

Assocs., 97 F.3d at 637 (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568,

573 (2d Cir. 1993)).  "An ambiguity exists where the terms of the contract 'could suggest more

than one meaning when viewed objectively by a reasonably intelligent person who has examined

the context of the entire integrated agreement and who is cognizant of the customs, practices,

usages and terminology as generally understood in the particular trade or business.'" RSL

Commc'ns, PLC v. Bildirici, No. 04 Civ. 5217(RJS), 2010 WL 846551, at *1 (S.D.N.Y. Mar. 5,

2010) (quoting Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 466 (2d

Cir. 2010)).  "[T]he court should not find the contract ambiguous where the interpretation urged

by one party would 'strain [] the contract language beyond its reasonable and ordinary

meaning.'" Maverick Tube Corp., 595 F.3d at 467 (quoting Bethlehem Steel Co. v. Turner

Constr. Co., 2 N.Y.2d 456, 459 (1957)).

I.         **THE INDENTURE'S LIMITATION ON SUITS PROVISION**

        A.        **Prerequisites for Suit**

        Defendants argue that this action must be dismissed because of Plaintiff's failure to satisfy the prerequisites for suit set forth in § 5.8 of the Indenture. That section provides:

> No Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless
>
> (a)    Such Holder has previously given to the Trustee written notice of an Event of Default[5];
>
> (b)    Except as otherwise provided in Section 5.9 hereof, the Holders of at least 25% of the then Aggregate Outstanding Amount of the Notes of the Controlling Class shall have made written request to the Trustee to institute Proceedings in respect of such Event of Default in its own name as Trustee hereunder;
>
> (c)    Such Holder or Holders have offered to the Trustee indemnity satisfactory to it against the costs, expenses and liability to be incurred in compliance with such request;
>
> (d)    The Trustee for 30 days after its receipt of such notice, request and offer of indemnity has failed to institute any such Proceeding; and
>
> (e)    No direction inconsistent with such written request has been given to the Trustee during such 30-day period by a Majority of the Controlling Class.

(Yoskowitz Aff., Ex. 2 (Indenture) § 5.8)[6]

---

[5] Under the Indenture, an "Event of Default" is triggered by a number of circumstances, including "the failure on any Distribution Date to disburse amounts available in the Interest Collection Account or Principal Collection Account in excess of U.S. $500 in accordance with the order of priority set forth under Section 11.1 hereof. . . ." (Yoskowitz Aff., Ex. 2 (Indenture) § 5.1(c)) The parties agree that if Plaintiff received smaller January and April 2009 distribution payments than what Plaintiff was entitled to under the Indenture, the incorrect payments would constitute an "Event of Default" under the Indenture. (Pltf. Br. at 5; BONY/Harding Br. at 7)

[6] While the Indenture recognizes noteholders' right to sue to enforce the Indenture's provisions regarding principal and interest payments, the Indenture explicitly makes the exercise of that right subject to the limitation on suits provision in § 5.8: See Yoskowitz Aff., Ex. 2 (Indenture) at §5.9(a):

Plaintiff does not contend that it satisfied the prerequisites for suit listed in

Section 5.8, but instead contends that

> (1) the limitation on suits, or "no action," provision of the Indenture does not
> apply to actions against indenture trustees such as BONY; and

> (2) this provision does not bar suit against the remaining defendants – Lexington
> Capital Funding III, LLC and Harding – because such clauses "do[] not
> preclude claims for mismanagement."

(Pltf. Br. 10-14)  In interpreting "no action" clauses, this Court is mindful that "[t]hese clauses

are strictly construed."  Cruden v. Bank of New York, 957 F.2d 961, 968 (2d Cir. 1992); see also

Jackson Nat. Life. Ins. Co. v. Ladish Co., Inc., 1993 WL 43373, at *5 (S.D.N.Y. Feb. 18, 1993)

(interpreting no-action clause "in accord with the plain meaning of its terms").

### B.      Ramifications of Plaintiff's Non-Compliance
### with the Limitation on Suits Provision

#### 1.      As to the Co-Issuer and Collateral Manager

Plaintiff has presented no argument and has cited no case law suggesting that the

Indenture's limitation on suits provision should not be enforced as to Lexington Capital Funding

III, LLC, the co-issuer, and Harding, the collateral manager.  "It is well established that 'no

action' clauses bar claims by individual bondholders who fail to comply with the conditions

precedent recited therein."  Metropolitan West Asset Mgmt., LLC v. Magnus Funding, Ltd.,

2004 WL 1444868, at *5 (S.D.N.Y. June 25, 2004) (citing Victor v. Riklis, No. 91 Civ. 2827,

1992 WL 122911 (S.D.N.Y. May 15, 1992)); see also McMahan & Co. v. Wherehouse Entm't,

---

Notwithstanding any other provision in this Indenture (other than Section 2.6(h)) hereof,
the Holder of any Note shall have the right, which is absolute and unconditional, to
receive payment of the principal of and interest on such Note as such principal and
interest become due and payable in accordance with Section 13.1 hereof and the Priority
of Payments and, subject to the provisions of Section 5.8 hereof, to institute proceedings
for the enforcement of any such payment, and such right shall not be impaired without
the consent of such Holder.

(Yoskowitz Aff., Ex. B (Indenture) § 5.9(a) (emphasis added))

65 F.3d 1044, 1050-51 (2d Cir. 1995) (noting that "no action" clauses "have been enforced in a variety of contexts in both federal and state courts") (citing Friedman v. Chesapeake and Ohio Ry. Co., 261 F.Supp. 728, 729-31 (S.D.N.Y. 1966) (action to accelerate the time of payment on bonds), aff'd, 395 F.2d 663 (2d Cir.1968), cert. denied, 393 U.S. 1016 (1969); Greene v. New York United Hotels, Inc., 236 A.D. 647 (1st Dept. 1932) (action based on non-payment of coupons on debenture bonds), aff'd, 261 N.Y. 698 (1933); see also Cruden v. Bank of New York, No. 85 Civ. 4170 (JFK), 1990 WL 131350, at *7 (S.D.N.Y. Sept. 4, 1990) (finding that non-compliance with "no action" clause barred action by debenture holders against issuer), aff'd, 957 F.2d 961 (2d Cir.1992).

   Here, Plaintiff's sole argument for excusing compliance with the "no action" provision – as to Lexington Capital Funding III, LLC and Harding – is that such clauses "do[] not preclude claims for mismanagement."[7] (Pltf. Br. 13). Plaintiff cites one case in support of this proposition: Metropolitan West Asset Mgmt., LLC v. Magnus Funding, Ltd., 2004 WL 1444868, at *5 (S.D.N.Y. June 25, 2004). Although that case involves a "no action" provision very similar to the Indenture's limitation on suits provision, it provides no support for Plaintiff's argument.

   In Metropolitan West, a noteholder sued an indenture trustee and investment manager, alleging that they had breached the indenture by failing to give the noteholder notice of a liquidation and by mismanaging the trust collateral. Metropolitan West, 2004 WL 1444868, at *2, *4. The co-issuers – parties equivalent to Lexington Capital Funding III, LLC here – were voluntarily dismissed before the court considered the remaining defendants' motion to dismiss.

---

[7] Plaintiff has not argued that its claims against any defendant may be brought under the Trust Indenture Act, 15 U.S.C. § 77ppp(b), regardless of non-compliance with the Indenture's limitation on suits provision. This Court has not considered whether the Trust Indenture Act excuses Plaintiff's non-compliance with the limitation on suits provision, and any such argument has been waived.

Id. at *1 n.1.  Because plaintiff did "not seek recovery from the issuer on its notes, but rather, [sought] damages from the Trustee and Investment Manager resulting from an alleged wrongful liquidation, without an effect on the priority of payments from the underlying collateral," and because the "no action" clause "applie[d] by its terms to only claims . . .  seeking payment on the notes," the court held that plaintiff's claims were not subject to the no action clause.  Id. at *4-*5.

The facts here are entirely different.  Plaintiff has sued the co-issuer and alleges that it has not received proper payment on its Notes, a circumstance which constitutes an "Event of Default" under the Indenture (Yoskowitz Aff., Ex. 2 (Indenture) § 5.1(c)) and thus falls squarely within the limitation on suits clause.  Plaintiff also seeks a judicial determination that will affect the priority of payments, and thus impact not only the Plaintiff but other noteholders.

In any event, Plaintiff's bare allegation that "Defendants have mismanaged and impaired the Collateral securing the Notes" (Am. Cmplt. ¶ 59) is not sufficient to defeat Lexington and Harding's motion to dismiss.  Plaintiff has pleaded facts suggesting only that the defendants misapplied the Indenture's priority of payment provisions.  There are no pleaded facts suggesting mismanagement or impairment of collateral.  "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (citation omitted).

Because Plaintiff concedes that it has not complied with the limitation on suits provision, and because Plaintiff has cited no law suggesting that this case can proceed against the co-issuer and collateral manager in the face of its non-compliance, Plaintiff's claims against Lexington Capital Funding III, LLC and Harding will be dismissed.

### 2.    As to the Trustee

BONY contends that Plaintiff's failure to comply with the limitation on suits provision also requires dismissal of Plaintiff's claims against BONY.  In Cruden v. Bank of New

York, however, the Second Circuit – addressing a limitation on suits provision very similar to that at issue here[8] – found that the provision, in the event of non-compliance, barred suit against the issuer, but not against the indenture trustee.

In <u>Cruden</u>, the District Court found that

> the "no action" provision in the Indentures delays actions by debenture holders for defaults by the *issuer*. . . . The Indentures require the debenture holders, before instituting suit against the issuer for default, to give written notice to the trustee of "an event of default," and to request that the trustee bring suit "in its own name as trustee." Defendants correctly note the absurdity of the scenario proposed by plaintiffs:  the debenture holders would be required to obtain permission from the trustees before the trustees could be sued for breach.  The no-action and other provisions preventing debenture holders from suing applies to the right to sue the *issuer* for non-payment of principal and interest until default. . . . The no-action provision has never been held to bar actions against indenture trustees.

<u>Cruden v. Bank of New York</u>, No. 85 Civ. 4170 (JFK), 1990 WL 131350, at *7 (S.D.N.Y. Sept. 4, 1990) (emphasis in original).

On appeal, the Second Circuit approved the District Court's ruling and reasoning:

> The district court held that the "no action" clause applied only to debenture holder suits against [the successor to the issuer], not the Indenture Trustees. . . . This construction of [the limitation on suits provision] obviously is correct, as it would be absurd to require the debenture holders to ask the Trustee to sue itself.

---

[8]  The limitation on suits provision in <u>Cruden</u> reads as follows:

> No holder of any Debenture shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceedings at law or in equity or in bankruptcy or otherwise, upon or under or with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless such holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than twenty-five per cent in aggregate principal amount of the Debentures then outstanding shall have made written request upon the Trustee to institute such action or proceedings in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for thirty days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings. . . .

<u>Cruden</u>, 957 F.2d at 967-68 (emphasis removed).

13

Cruden, 957 F.2d at 968; see also Newby v. Enron Corp., 2008 WL 744823, at *10 n.25 (S.D. Tex. Mar. 19, 2008) ("Another exception to compliance with the conditions precedent in a no-action clause is where the bondholders allege misconduct by the trustee"); In re Oakwood Homes Corp., 2004 WL 2126514, at *3 (Bankr. D. Del. Sept. 22, 2004) ("[B]ondholders will be excused from compliance with a no-action provision where they allege specific facts which if true establish that the trustee itself has breached its duty under the indenture"); Feldbaum v. McCrory Corp., 1992 WL 119095, at *7 (Del. Ch. June 2, 1992) (same).

This case presents the same "absurdity" referenced in Cruden.  Under the Indenture, BONY is responsible for making appropriate quarterly disbursements from the Principal and Interest Collection Accounts to noteholders.  (Yoskowitz Aff., Ex. 2 (Indenture) at § 11.1(a))  The Amended Complaint asserts that BONY initially made proper disbursements in connection with January and April 2009 distributions, but then breached the Indenture by recouping certain of these monies from Plaintiff's bank account, based on revised Note Valuation Reports that improperly applied the Indenture's Account Payment Priority provision.  Plaintiff goes on to allege that it gave "written notice to the Trustee . . . demanding payment of the [original] distributions."  (Am. Cmplt. ¶¶ 39-44, 48-49)  Further compliance with the limitation on suits provision would require Plaintiff to demand that the Trustee initiate proceedings against itself to rectify the alleged error.  See Yoskowitz Aff., Ex. 2 (Indenture) at § 5.8.

BONY has not distinguished Cruden or demonstrated that it is not applicable here. Accordingly, the claims against BONY will not be dismissed based on Plaintiff's non-compliance with the limitation on suits provision.

## II.   BREACH OF CONTRACT CLAIM AGAINST BANK OF NEW YORK

BONY argues that Plaintiff's breach of contract claim should also be dismissed because the relevant terms of the Indenture clearly and unambiguously demonstrate that its application of the Account Payment Priority provision was appropriate and, in any event, the Indenture releases it from liability for actions taken in good faith.  (BONY/Harding Br. 13-16) Neither of these arguments is susceptible, at this stage of the proceedings, to resolution as a matter of law.

### A.   The Indenture is Ambiguous

"The elements of a breach of contract claim under New York law are as follows: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages."  24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 42 (2d Cir. 2005).

Here, the parties dispute only whether BONY fulfilled its obligations with respect to disbursement of principal payments under the Indenture.  BONY argues that its actions were proper, because "the clear language of Section 11.1(a)(ii) . . . provides that amounts in the Principal Collection Account are to be applied first to the Account Payment Priority (that is, the priority of payments set forth in Section 11.1(m)) before being applied to the Principal Proceeds Waterfall."  (BONY/Harding Br. 4)  Plaintiff argues, however, that the Indenture is ambiguous on this point, and notes that Defendants' claims of unambiguity are belied by their own inconsistent application of the Account Payment Priority provision.  (Pltf. Br. 14)  Accordingly, the question before the Court is whether the terms of the Indenture unambiguously demonstrate that application of the Account Payment Priority provision (§ 11.1(m)) – before proceeding to calculation of the Principal Proceeds Waterfall payment amount under § 11.1(a)(ii) – is appropriate in the absence of a Class A-1 Funding request.

Section 11.1(a)(ii) of the Indenture provides:

On each Distribution Date (other than a Redemption Date, the Stated Maturity or the Accelerated Maturity Date), <u>after applying funds in the Accounts in accordance with the Account Payment Priority</u>, Principal Proceeds, and, to the extent described in the Sequential Payment Priority and the Modified Sequential Payment Priority, the CDS Reserve Account Excess Withdrawal Amount with respect to the related Due Period will be distributed in order of priority (the "Principal Proceeds Waterfall"). . . .

(Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(a)(ii)) (emphasis added).

Section 11.1(m) of the Indenture provides:

<u>Before requesting a Class A-1 Funding under the Class A-1 Swap to fund a Permitted Use</u>, the Trustee shall apply all funds, securities and other property standing to the credit of the Accounts specified below in the order of seniority specified below in order to pay as and when due and payable each of the obligations of the Issuer listed below (the "Account Payment Priority") . . .

(Yoskowitz Aff., Ex. 2 (Indenture) § 11.1(m)) (emphasis added).

"An ambiguous term is one about which reasonable minds could differ." <u>Consarc Corp. v. Marine Midland Bank, N.A.</u>, 996 F.2d 568, 573 (2d Cir. 1993); <u>see</u> <u>also</u> <u>Sayers v. Rochester Telephone Corp. Supp. Mgmt. Pension Plan</u>, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting <u>Walk-In Medical Centers, Inc. v. Breuer Capital Corp.</u>, 818 F.2d 260, 263 (2d Cir. 1987) (internal citation omitted)) (contract language ambiguous "if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'").

Here, Section 11.1(a)(ii) of the Indenture provides that the Principal Proceeds Waterfall payment is calculated "after applying funds in the Accounts in accordance with the Account Payment Priority [provision]." (Yoskowitz Aff., Ex. 2 (Indenture), § 11.1(a)(ii)) However, the first clause in the Account Payment Priority provision – Section 11.1(m) – references a request for Class A-1 Funding: "Before requesting a Class A-1 Funding under the

16

Class A-1 Swap to fund a Permitted Use. . . ."  (Yoskowitz Aff., Ex. 2 (Indenture), § 11.1(m))

Given the initial clause of Section 11.1(m), one interpretation of this provision is that it only

applies in the context of a Class A-1 Funding request.  It is undisputed that there was no such

funding request here.

      While Defendants argue that there is no ambiguity in Section 11.1(a)(ii) and

Section 11.1(m), this assertion is significantly undermined by the fact that in the first round of

Note Valuation Reports for the January and April 2009 distributions, and in connection with

earlier distribution payments, the Issuer and the Trustee authorized and made distribution

payments without application of the Account Payment Priority provision in Section 11.1(m).

The Issuer then issued revised Note Valuation Reports for January 2009 and April 2009 – and

the Trustee recouped an amount from Plaintiff corresponding to the revisions in the Note

Valuation Reports – reflecting application of Section 11.1(m).  In sum, Defendants abandoned

their original interpretation of the Indenture, reversed course in their accounting, and have not

offered a cogent explanation as to why this was done.  Defendants have likewise not explained

why the initial clause of Section 11.1(m) referencing a Class A-1 funding request should be read

as not limited to this circumstance.[9]

---

[9]  The Amended Complaint also asserts that the Account Payment Priority provision was applied
to Plaintiff's principal payment but "oddly" was not applied to its interest payment.  Plaintiff
contends that "the inconsistent and improper treatment of interest and principal calculations
confirms that the Revised Valuation Report is incorrect [and] suspect."  (Am. Cmplt. ¶¶ 45-47)

Defendants respond that the "Interest Proceeds Waterfall does not come into play in 11.1(m)."
(BONY/Harding Br. 15; see also BONY/Harding Reply Br. 4).  It is correct that Section
11.1(m)(1) references the "Principal Collection Account" but does not refer to the Interest
Collection Account.  Defendants' argument that "Interest Proceeds are not affected [by Section
11.1(m), the Account Payment Priority provision]" is called into question, however, by the
following language in that provision:

      The Interest Proceeds, Principal Proceeds, Specified Principal Proceeds, Distributable
      Principal Proceeds and CDS Reserve Account Excess Withdrawal Amount for any

In sum, based on the present record, this Court concludes that the Indenture is ambiguous as to whether the Account Payment Priority is applicable to all distributions, or only when a Class A-1 funding request has been made.  "When the language of a contract is ambiguous, its construction presents a question of fact which may not be resolved by the court [as a matter of law]."  Leon v. Lukash, 121 A.D.2d 693, 694 (2d Dept. 1986).  BONY is not entitled to dismissal of Plaintiff's breach of contract claim.

### B.    Immunity for Actions Taken in Good Faith

BONY also argues that this action is barred by Section 6.1 of the Indenture, which provides in part:

> (c) No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that . . .
>
> > (ii) the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it shall be conclusively determined by a court of competent jurisdiction that the Trustee was negligent in ascertaining the pertinent facts;
> >
> > (iii) the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Issuer or the Co-Issuer in accordance with the Indenture and/or a Majority (or such other percentage as may be required by the terms hereof) of the Controlling Class (or other Class if required or permitted by the terms hereof) relating to the time, method and place of conducting any Proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture . . .

(Yoskowitz Aff., Ex. 2 (Indenture) § 6.1(c) (emphasis in original))

BONY argues that it is entitled to dismissal, because "[u]nder the express terms of the Indenture, the Trustee is not liable for any errors of judgment made in good faith."

---

Distribution Date shall be determined after taking into account all of the payments to be made on such Distribution Date in accordance with the Account Payment Priority.

(Yoskowitz Aff., Ex. 2 (Indenture), § 11.1(m)).  This issue is likewise not susceptible to resolution on a motion to dismiss.

(BONY/Harding Br. 15-16)  Whether a party to a contract acted in good faith, however, generally presents a question of fact for a jury.  See, e.g., International Contractors Corp. v. Illinois Union Ins. Co., 79 A.D.3d 1428, 1431 (3d Dept. 2010) ("[F]ailure to [comply with certain terms of an insurance contract] may be excused when the insured has a reasonable good faith belief of nonliability. . . . [This issue] is generally a question of fact for the jury."); see also Greenbert v. Bar Steel Const. Corp., 37 A.D.2d 162, 165 (1st Dept. 1971) (whether a party to a contract performed its obligations in good faith presents a question of fact); Odell v. City of New York, 206 A.D. 68, 85 (1st Dept. 1923) (same).

Given the factual record here – in which BONY adopted one interpretation of the Indenture for several distributions and then, without explanation, reversed course – this Court cannot rule, on a motion to dismiss and as a matter of law, that it acted in good faith. BONY's motion to dismiss the breach of contract claim will be denied.

## III.   BREACH OF FIDUCIARY DUTY CLAIM AGAINST BONY

The Amended Complaint sets forth a breach of fiduciary duty claim against BONY.  Plaintiff asserts that "[a]s a Trustee of the Collateral securing the Notes, the Trustee owes the Note Holders a fiduciary duty to act in good faith and in the best interests of the Note Holders with respect to its administration of the trust and Indenture.  See Section 6.17 of the Indenture[.]"  (Am. Cmplt. ¶ 97)  Plaintiff further alleges that BONY breached this duty by "mismanaging the Collateral, misappropriating trust funds, employing and permitting suspect and inconsistent calculations with respect to the Notes, failing and refusing to disclose pertinent information regarding Defendants' actions in connection with funds held in trust pursuant to the Indenture, and failing to act in the best interests of the Note Holders."  (Am. Cmplt. ¶ 98)

"In order to prevail on the tort claim of breach of fiduciary duty, a plaintiff must prove:  (1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach." Metropolitan West, 2004 WL 1444868, at *8 (citing Weiss, Peck & Greer, LLC v. Robinson, No. 03 Civ. 0209, 2003 WL 1396436, at *7 (S.D.N.Y. Mar. 19, 2003).

Plaintiff has offered no facts supporting its breach of fiduciary duty claim, however, other than its assertion that BONY improperly applied the Account Payment Priority and incorrectly calculated principal proceeds.  "It is well-settled . . . that 'a simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract.'"  Metropolitan West, 2004 WL 1444868, at *8 (quoting Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 70 N.Y.2d 382, 389 (1987) (citations omitted)). Thus, where a "plaintiff's breach of fiduciary duty claim arises out of the same facts as its breach of contract claim . . . [the fiduciary duty claim] is . . . insufficient."  Metropolitan West, 2004 WL 1444868, at *8; see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., 2003 U.S. Dist. LEXIS 23062, at *15 (S.D.N.Y. Dec. 22, 2003) (quoting William Kaufman Org., Ltd. v. Graham & James, LLP, 269 A.D.2d 171, 173 (1st Dept. 2000) ("'A cause of action which is merely duplicative of a breach of contract claim cannot stand.'").  Accordingly, Plaintiff's breach of fiduciary duty claim will be dismissed.

## IV.   UNJUST ENRICHMENT

Plaintiff also asserts a claim for unjust enrichment against all defendants.[10]  (Am. Cmplt. ¶¶ 79-85)  "'Unjust enrichment is a quasi contract claim.'"   Zolotar v. New York Life

---

[10]  Although this Court ruled above that Plaintiff's claims against Lexington Capital Funding III, LLC and Harding must be dismissed because of Plaintiff's failure to comply with the Indenture's

Ins. Co., 172 A.D.2d 27, 33 (1st Dept. 1991) (quoting Feigen v. Advance Capital Management

Corp., 150 A.D. 2d 281, 283 (1st Dept. 1989)).  Where no party disputes the existence of a

contract governing the dispute, recovery on a quasi-contract theory is not permitted:

> "The existence of a valid and enforceable written contract governing a particular subject
> matter ordinarily precludes recovery in quasi contract for events arising out of the same
> subject matter.  A 'quasi contract' only applies in the absence of an express agreement,
> and is not really a contract at all, but rather a legal obligation imposed in order to prevent
> a party's unjust enrichment. . . . Briefly stated, a quasi-contractual obligation is one
> imposed by law *where there has been no agreement or expression of assent, by word or
> act, on the part of either party involved. . . .*
>
> It is impermissible . . . to seek damages in an action sounding in quasi contract where the
> suing party has fully performed on a valid written agreement, the existence of which is
> undisputed, and the scope of which clearly covers the dispute between the parties.

Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield, 448 F.3d 573, 587 (2d Cir.

2006) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987)

(internal citations omitted; emphasis in original); see also Swits v. New York Sys. Exchange,

Inc., 281 A.D.2d 833, 836 (3d Dept. 2001) ("the existence of a valid written agreement precludes

recovery on a quasi-contract theory"); HGCD Retail Servs., LLC v. 44-45 Broadway Realty Co.,

37 A.D.3d 43, 55 (1st Dept. 2006) ("a valid written agreement covering the dispute in issue

precludes [the assertion of a] quantum meruit claim").

   Here, there is no dispute that Lexington Capital Funding III, LLC and BONY are

parties to the Indenture (Am. Cmplt. ¶¶ 5, 10), to which Plaintiff is a third party beneficiary.[11]

---

limitation on suits provision, the Court will nonetheless consider separately the merits of each of
Plaintiff's claims.

[11] "One who seeks to recover as a third-party beneficary of a contract must establish that a valid
and binding contract exists between other parties, that the contract was intended for his or her
benefit, and that the benefit was direct rather than incidental."  Edge Mgmt. Consulting, Inc. v.
Blank, 25 A.D.3d 364, 368 (1st Dept. 2006).  "'One is an intended beneficiary if one's right to
performance is 'appropriate to effectuate the intention of the parties' to the contract and . . . "the
circumstances indicate that the promisee intends to give the beneficiary the benefit of the
promised performance."'"  Id. (quoting Roosevelt Islanders for Responsible Southtown Dev. V.
Roosevelt Island Operating Corp., 291 A.D.2d 40, 57 (1st Dept. 2001) (quoting Lake Placid Club

Moreover, Plaintiff's claim for unjust enrichment is based on the terms of Indenture: Plaintiff alleges that "Defendants remain in possession of the monies they withdrew from the Principal Collection Account in contravention of the provisions in the Indenture." (Am. Cmplt. ¶ 80) Because the unjust enrichment claim against BONY and Lexington Capital Funding III arises out of a written contract and out of the same facts as the breach of contract claim, the unjust enrichment claim is precluded and will be dismissed.

Plaintiff's unjust enrichment claim against Harding suffers from the same defect. Plaintiff pleads in the Amended Complaint that "Harding is the 'Collateral Manager' under the Indenture and is required, pursuant to the 'Collateral Management Agreement' between Harding and the Issuer, to 'perform . . . advisory and administrative tasks for or on behalf of the issuer . . . includ[ing] . . . monitoring the Collateral and assisting the Trustee to provide to the Issuer all reports and other data that the Issuer is required to prepare and deliver under the Indenture.'" (Am. Cmplt. ¶ 12) The gravamen of Plaintiff's claim against Harding is that it improperly discharged its contractual obligations under the Collateral Management Agreement to "monitor[] the Collateral and assist[] the Trustee to provide to the Issuer all reports and other data that the Issuer is required to prepare . . . under the Indenture." (Am. Cmplt. ¶ 12) Because Plaintiff's claim is founded on the CMA – which no one disputes is a valid and enforceable written contract – recovery on a quasi-contract theory is precluded. Beth Israel Medical Center, 448 F.3d at 587.

---

Attached Lodges v. Elizabethtown Bldrs., Inc., 131 A.D.2d 159, 161 (3d Dept. 1987))); see also Septembertide Pub., B.V. v. Stein and Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989) (a party is a third-party beneficiary where circumstances indicate that the promisee intended to benefit the third party).

Here, it is clear that the parties to the Indenture intended for the Noteholders to benefit from the promise: the "Preliminary Statement" of the Indenture provides that "[a]ll covenants and agreements made by the Co-Issuers herein are for the benefit and security of the Noteholders." (Yoskowitz Aff., Ex. 2 (Indenture) at 1) Accordingly, the Noteholders are third-party beneficiaries of the Indenture.

## V.    BREACH OF THE IMPLIED COVENANT OF
## <u>GOOD FAITH AND FAIR DEALING</u>

Plaintiff also asserts a claim against all defendants for breach of the implied covenant of good faith and fair dealing.  (Am. Cmplt. ¶¶ 100-103)  A claim for breach of the implied covenant of good faith and fair dealing – like a claim for unjust enrichment – is not proper when a written agreement governs the subject matter of the claim.  "Every contract governed by New York law . . . contains an implied covenant to perform the contract fairly and in good faith."  <u>Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.</u>, 723 F. Supp. 976, 991 (S.D.N.Y. 1989) (citing <u>Rowe v. Great Atlantic & Pacific Tea Co.</u>, 46 N.Y.S.2d 827, 830 (N.Y. 1978)).  However, "a court cannot imply a covenant inconsistent with terms expressly set forth in the contract."  <u>Hartford Fire Ins. Co.</u>, 723 F. Supp. at 991 (citing <u>Gardner & Florence Call Cowles Found. v. Empire, Inc.</u>, 589 F. Supp. 669, 673 (S.D.N.Y. 1984)).  Furthermore, "'where the instrument contains an express covenant in regard to any subject, no covenants are to be implied in respect to the same subject.'"  <u>Hartford Fire Ins. Co.</u>, 723 F. Supp. at 991 (quoting <u>Burr v. Stenton</u>, 43 N.Y. 462, 464 (1871)).  Accordingly, "[a] claim for breach of the implied covenant can be maintained simultaneously with a breach of contract claim 'only if the damages sought by the plaintiff[s] for breach of the implied covenant are not "intrinsically tied to the damages allegedly resulting from breach of contract."'"  <u>Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.</u>, 2007 U.S. Dist. LEXIS 22966, at *17 (S.D.N.Y. Mar. 28, 2007) (quoting <u>Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.</u>, 2000 U.S. Dist. LEXIS 3941, at *8 (S.D.N.Y. Mar. 30, 2000) (quoting <u>Canstar v. J.A. Jones Constr. Co.</u>, 212 A.D.2d 452, 452 (1st Dept 1995))).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, like its unjust enrichment claim, arises out of its assertion that the revised Note Valuation

Reports improperly applied the Account Payment Priority.  Although the parties disagree as to whether the Account Payment Priority was properly applied, there is no dispute that the Indenture "'contains an express covenant in regard to [this] subject.'"  Hartford Fire Ins. Co., 723 F. Supp. at 991 (quoting Burr, 43 N.Y. at 464).  Because Plaintiff's claim for breach of the implied covenant is "intrinsically tied to the damages allegedly resulting from breach of contract," Canstar, 212 A.D.2d at 452, it must be dismissed.

## VI.   DIVERSION

It is unclear what claim Plaintiff asserts in the Amended Complaint's fourth cause of action, which is entitled "Diversion."  (Am. Cmplt. ¶¶ 86-89)  Under New York law, corporate officers may be liable for wasting corporate assets, where they have diverted those assets for improper or unnecessary purposes.  Stern v. General Electric Co., 1991 U.S. Dist. LEXIS 19091, at *12 (S.D.N.Y. Jan. 12, 1992) (quoting Aronoff v. Albanese, 85 A.D.2d 3, 5 (2d Dept. 1982)); see Gruber v. Victor, 1996 U.S. Dist. LEXIS 12567, at *6 (S.D.N.Y. Aug. 28, 1996) (diversion claim exists where a director or officer "breached his fiduciary duties to [the plaintiff], by diverting corporate assets"); Abrams v. Donati, 66 N.Y.2d 951, 953 (1985) ("[A]llegations of . . . diversion of assets by officers or directors to their own enrichment . . . plead a wrong to the corporation only, for which a shareholder may sue derivatively.").  This is not a case about diversion of corporate assets by an officer or director of a corporation. Accordingly, this cause of action will be dismissed.

## VII.   TORTIOUS INTERFERENCE CLAIM AGAINST HARDING

Plaintiff asserts a claim against Harding – the collateral manager – for tortious interference with contract.  (Am. Cmplt. ¶¶ 74-78)  Plaintiff asserts that "[a]s a Collateral Manager under the Indenture, Harding was aware of the terms of the Indenture, including with respect to periodic distributions to the Note Holders . . . and assumed obligations and

responsibilities, pursuant to the Indenture and Collateral Management Agreement, to manage and safeguard the Collateral securing the Notes."  (Am. Cmplt. ¶ 76)  Plaintiff further alleges that "[Harding] and the Trustee acted in concert with Lexington Capital to breach the Indenture and divert money otherwise payable to Plaintiff, and sought to justify such diversion in the Note Valuation Report by improperly applying the Account Payment Priority calculation of Section 11.1(m)."  (Am. Cmplt. ¶ 49; see also Am. Cmplt. ¶ 77 ("Harding intentionally procured a breach of the Indenture by, in concert with [BONY] and Lexington Capital, causing improper and suspect application and use of funds held in trust pursuant to the Indenture and diverting the Note Holders' distributions."  (Am. Cmplt. ¶ 77)  Finally, the Amended Complaint asserts that the revised Note Valuation Reports were "based in part on information received from the Collateral Manager.  Because the revised Valuation Reports were improper, Harding, in part, caused the breach of the Indenture."  (Am. Cmplt. ¶ 53)

"The elements that must be shown to state a claim for tortious interference with contract are:  (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of such contract; (3) defendant's intentional procuring of the breach of the contract; and (4) damages."  CIBC Bank & Trust Co. v. Banco Cent. do Brasil, 886 F. Supp. 1105, 1119 (S.D.N.Y. 1995).  "Further, allegations of causation are required, as the plaintiff 'must allege in the complaint that there would not have been a breach but for defendants' conduct.'"  Sedona Corp. v. Ladenburg Thalmann & Co., 2005 U.S. Dist. LEXIS 16382, at *61 (S.D.N.Y. Aug. 9, 2005) (quoting AIM Int'l Trading, L.L.C. v. Valcuine S.P.A., 2003 U.S. Dist. LEXIS 8594, at *4 (S.D.N.Y. May 22, 2003)).

Here, the first two elements are satisfied:  the Indenture is a valid contract and Harding knew of its existence.  Plaintiff has not, however, pleaded facts demonstrating that

Harding "intentional[ly] procur[ed] the breach of the contract," <u>CIBC Bank & Trust Co.</u>, 886 F.
Supp. at 1119, much less that "there would not have been a breach but for [Harding's] conduct."
<u>Sedona Corp.</u>, 2005 U.S. Dist. LEXIS 16382, at *61.

   The Amended Complaint alleges that "the Issuer issues an accounting and
provides a 'Note Valuation Report' to the Note Holders and other Indenture participants" (Am.
Cmplt. ¶ 21), and that "'[e]ach Note Valuation Report shall constitute instructions to the Trustee
to withdraw on the related Distribution Date from the Payment Account and pay or transfer
amounts set forth in such report.'"  (<u>Id</u>. at¶ 24 (quoting Yoskowitz Aff., Ex. 2 (Indenture) at §
10.7(b)).  Accordingly, if the revised Note Valuation Reports resulted in Plaintiff not receiving a
proper principal payment, that result flowed from the Issuer's actions; Harding, as collateral
manager, was merely following the Issuer's instructions.  There are no pleaded facts showing
that Harding induced the Issuer to breach the Indenture by issuing the revised Note Valuation
Reports.  The allegation that Harding provided information to the Issuer for use in preparing the
revised Note Valuation Reports – as it was required to do under the CMA – is not sufficient to
demonstrate that Harding intentionally induced the Issuer to breach its obligations under the
Indenture.  Similarly, Plaintiff's conclusory allegations that Harding "caus[ed] improper and
suspect application and use of funds," and that Harding "acted in concert with Lexington
Capital," are not sufficient.  <u>See Iqbal</u>, 129 S. Ct. at 1949 (complaint is inadequately pled if it
merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of
action'") (quoting <u>Twombly</u>, 550 U.S. at 555).  Accordingly, the tortious interference claim
against Harding will be dismissed.

## VIII.   CLAIM FOR A DECLARATORY JUDGMENT

Plaintiff seeks "a declaration from the Court that the application of the Account Payment Priority of Section 11.1(m) on the January and April Distribution Dates was improper and that the correct and appropriate methodology that must be utilized when calculating interest and principal proceeds due to Note Holders is the Priority of Payments formula in Section 11.1(a) of the Indenture."  (Am. Cmplt. ¶ 95)

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The Act thus "confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'"  Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 187 (2d Cir. 2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).  In determining whether declaratory relief is warranted, "[t]he court must consider whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Camofi Master LDC v. College Partnership, Inc., 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted)).  When the court in its discretion determines that either of these conditions is satisfied, it is "'required to entertain a declaratory judgment action.'"  Cosa Instrument Corp. v. Hobre Instruments BV, 698 F. Supp. 2d 345, 350 (E.D.N.Y. 2010) (quoting Starter Corp. v. Converse, Inc., 84 F.3d 592, 597 (2d Cir. 1996)).

Here, a grant of declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue."  Cont'l Cas. Co., 977 F.2d at 737.  Plaintiff seeks a

declaration that the Account Payment Priority applies only when Class A-1 Funding is requested, and that – in the absence of such a request – the interest and principal proceeds should be calculated in accordance with the Priority of Payments formula set forth § 11.1(a) of the Indenture.  (Am. Cmplt. ¶ 95)  It is clear that the parties have an ongoing disagreement about the circumstances under which the Account Payment Priority is to be applied, and a ruling from this Court would resolve this issue with respect to future distribution dates.  Cf. Federal Ins. Co. v. SafeNet, Inc., 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010) (declaratory judgment appropriate where it would resolve the parties' "vastly different positions regarding the applicability and enforceability of [certain provisions in an insurance policy]").

        BONY argues that "Plaintiff's declaratory relief cause of action fails as duplicative of its breach of contract action."  (BONY/Harding Br. 21)  A claim for declaratory relief is indeed improper where it "seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action."  Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006).  However, that is not true here.  This Court's decision on Plaintiff's breach of contract claim will settle the controversy only with respect to the January and April 2009 distributions, and not with respect to future distributions.  Accordingly, BONY's motion to dismiss the claim for declaratory relief will be denied.

## IX.    SPECIFIC PERFORMANCE

        The Amended Complaint sets forth a cause of action for specific performance against all defendants.  "[S]pecific performance is an equitable remedy for a breach of contract, rather than a separate cause of action."  Cho v. 401-401 57th St. Realty Corp., 300 A.D.2d 174, 175 (1st Dept. 2002); see also Champion Motor Group v. Visone Corvette, 992 F. Supp. 203, 209 (E.D.N.Y. 1998) ("[S]pecific performance is a remedy for breach of contract . . . not a distinct claim.").  The Court's task on a motion to dismiss is to "consider the factual allegations

in respondent's complaint to determine if they plausibly suggest an entitlement to relief," Iqbal, 129 S. Ct. at 1951, and not to determine the appropriate remedy. Accordingly, the cause of action for specific performance will be dismissed, but the Court will make no finding as to whether specific performance is warranted as a remedy.

### CONCLUSION

For the reasons stated above, Lexington Capital Funding III, LLC and Harding's motions to dismiss will be GRANTED in their entirety. BONY's motion to dismiss is GRANTED as to the Third, Fourth, Fifth, Seventh and Eighth causes of action, and is otherwise DENIED. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 27 and 32) and to terminate Harding and Lexington Capital as defendants.

Dated: New York, New York
July 28, 2011

SO ORDERED.

Paul G. Gardephe
United States District Judge